

08 CV 00919

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
JENNIFER PERDOMO,

                         Plaintiff,

         v.

FEDERAL JEANS, INC. and
YORAM MOUSSAIEFF, in his official and
individual capacities,

                        Defendants.

------------------------------------------------------------------X

Case No.

**COMPLAINT**

<u>Jury Trial</u>
<u>Demanded</u>

      Plaintiff Jennifer Perdomo, by and through her undersigned counsel, as and for her Complaint in this action against Federal Jeans, Inc. ("Federal Jeans" or the "Company") and Yoram Moussaieff ("Defendant Moussaieff") (together, "Defendants"), hereby alleges as follows:

## NATURE OF THE CLAIMS

      1.      This is an action seeking declaratory, injunctive and equitable relief, as well as monetary damages, to redress Defendants' unlawful employment practices, including their unlawful sexual harassment against Plaintiff in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e <u>et seq.</u> ("Title VII"), the New York State Human Rights Law, New York Executive Law §§ 290 <u>et seq.</u> and the New York City Human Rights Law, New York Administrative Code §§ 8-101 <u>et seq.</u>

      2.      Plaintiff was subjected to unlawful discrimination and harassment because of her sex.

3.    Defendants' conduct was knowing, malicious, willful and wanton and/or showed a reckless disregard for Plaintiff, which has caused and continues to cause Plaintiff to suffer substantial economic and non-economic damages, permanent harms to her professional and personal reputations, and severe mental anguish and emotional distress.

## JURISDICTION AND VENUE

4.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding the deprivation of Plaintiff's rights under federal civil rights laws. The Court has supplemental jurisdiction over Plaintiff's related claims arising under state or local law pursuant to 28 U.S.C. § 1367(a).

5.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) & (c) because Federal Jean's headquarters is located within the Southern District of New York and a substantial part of the events or omissions giving rise to this action occurred in this district.

## PARTIES

6.    Plaintiff Jennifer Perdomo is a twenty-five year old, female former employee of Federal Jeans who resides in North Bergen in the State of New Jersey. At all relevant times, she met the definition of an "employee" under all applicable statutes.

7.    Defendant Federal Jeans, Inc. is a New York Corporation with a principal place of business located at 1385 Broadway, New York, NY 10018. Federal Jeans is a manufacturer, importer, and distributor of denim products with approximately 100

employees. At all relevant times Defendant Federal Jeans met the definition of an "employer" under all relevant statutes.

8.    Defendant Yoram Moussaieff is the male owner and President of Federal Jeans, who, upon information and belief, resides in the State of New York, Kings County. At all relevant times, Defendant Moussaieff directly participated in the sexual harassment and other unlawful employment actions taken against Plaintiff.

### PROCEDURAL REQUIREMENTS

9.    Plaintiff has complied with all statutory prerequisites to her Title VII claims, having filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about January 26, 2007, and having received notice of her right to sue from the EEOC, dated November 29, 2007. This action is being filed within 90 days of receipt of her EEOC right to sue letter.

10.    Prior to the commencement of this action, a copy of this Complaint was served on the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of § 8-502 of the New York City Administrative Code.

11.    Any and all other prerequisites to the filing of this suit have been met.

### FACTUAL ALLEGATIONS

**Jennifer Perdomo's Career at Federal Jeans**

12.    Ms. Perdomo began working at Grupo Roma USA, LLC ("Grupo Roma") in February of 2006. Ms. Perdomo worked as a Head Sales Representative for Spoon Jeans, a brand developed by Grupo Rumo.

3

13.     Shortly thereafter, Federal Jeans purchased the Spoon Jeans license from Grupo Roma.  Ms. Perdomo continued her position as Head Sales Representative, working forty hours per week while pursuing her bachelor's degree in International Trade and Marketing at the Fashion Institute of Technology in New York City.  During her nine-month career at the Company, Ms. Perdomo performed her job in an exemplary manner.

14.     In this role, Ms. Perdomo was responsible for handling sales related to Spoon Jeans.  As one of only three sales representatives at the Company and the only Head Sales Representative for Spoon Jeans, Ms. Perdomo was a valuable employee of Federal Jeans.

15.     At all times, Ms. Perdomo was dedicated to her job and handled her job with the highest degree of competence and professionalism.

16.     Despite this high level of performance, Ms. Perdomo was subjected to a continuing pattern of discrimination and harassment based on her sex, including by Federal Jeans' President, Defendant Moussaieff.

**Severe and Pervasive Sexual Harassment at Federal Jeans**

17.     There is a hostile work environment at Federal Jeans in which female employees are subjected to sexual harassment at the hands of its top executive, Defendant Moussaieff, including unwanted sexual advances towards Ms. Perdomo and continuous sexually derogatory remarks.

18.     On numerous occasions, Ms. Perdomo asked Defendant Moussaieff to stop this inappropriate conduct, to no avail.  Even when she brought this offensive behavior to the attention of Eyal Ben-Yosef, Chief Executive Officer of Federal Jeans, no

4

action was taken by the Company to address this ongoing sexual harassment of Ms. Perdomo.

19.     By way of example only, Defendant Moussaieff would repeatedly make offensive comments to Ms. Perdomo regarding her body. On a daily basis, he would see Ms. Perdomo and make remarks such as, "You have such a good body" or "You have such a good ass."

20.     In addition, Defendant Moussaieff would often make inappropriate sexual remarks to Ms. Perdomo. For example, on one occasion, Defendant Moussaieff asked Ms. Perdomo, "Do you know how to suck on a lollipop? I'll teach you how to suck on a lollipop."

21.     In addition, Defendant Moussaieff regularly made comments such as these to other female employees at Federal Jeans, creating a sexually hostile work environment at the Company.

22.     In or about September 2006, when Ms. Perdomo was walking into her office, Defendant Moussaieff blocked her path, grabbing her around her waist. He told Ms. Perdomo that he wanted her to be his personal secretary and asked her to accompany him to Panama. Frightened, Ms. Perdomo told him she did not have a passport and managed to run away.

23.     After this incident, Ms. Perdomo told her then-supervisor and Head of Merchandising and Sales, Victoria Evangelou, about what had taken place. Ms. Evangelou told Ms. Perdomo that she would speak with Defendant Moussaieff. Ms. Evangelou, being aware of the sexually hostile environment at the Company, had told

Ms. Perdomo, "Jen, this is fashion, these guys are Israelis, this is going to happen everywhere."

24.     Even after Ms. Evangelou spoke with Defendant Moussaieff and informed him that his harassing conduct was beginning to scare Ms. Perdomo, he again asked Ms. Perdomo if she would go with him to Panama. In response, Ms. Perdomo told him that her then-boyfriend, a police officer, would disapprove. Rather than cease his sexual harassment of Ms. Perdomo, Defendant Moussaieff took her response as an invitation to inquire into Ms. Perdomo's private life by asking her inappropriate questions about her sexual relationship with her boyfriend.

25.     In early January of 2007, Defendant Moussaieff grabbed Ms. Perdomo's right buttock as she was walking into Ms. Evangelou's office. Shocked, Ms. Perdomo jumped up and yelled. Defendant Moussaieff simply walked away as if nothing had happened. Ms. Evangelou, having witnessed Ms. Perdomo's reaction, asked her what had occurred. When Ms. Perdomo told Ms. Evangelou what Defendant Moussaieff had just done, Ms. Evangelou proceeded to laugh.

**Unlawful Constructive Discharge**

26.     This unwelcome sexual harassment culminated on January 8, 2007. As Ms. Perdomo was getting ready to leave work for the day, Defendant Moussaieff came up behind her and placed his right hand on Ms. Perdomo's chest saying, "Hey cookie, what's going on, what's up?" Before she even had time to react, Defendant Moussaieff had his hand down her shirt and grabbed her nipple.

27.     Ms. Perdomo pushed him away and yelled, "Yoram stop! That's it!" In

response, Defendant Moussaieff said nothing and walked away towards the desk of Mr. Ben-Yosef. Immediately, Ms. Perdomo sent Ms. Evangelou a message over instant messenger telling her about what Defendant Moussaieff had just done. Defendant Moussaieff then returned and asked Ms. Perdomo, "Why do you say, Yoram stop?" Ms. Perdomo firmly told him, "Because Yoram, you've got to stop. You've gone too far. That's it."

28.    Immediately following this incident, Ms. Perdomo went to Ms. Evangelou. Ms. Evangelou simply told her to inform Mr. Ben-Yosef. Shaken up, Ms. Perdomo went home and told both her sister and her then-boyfriend about what Defendant Moussaieff had done to her.

29.    This sexual harassment by Defendants was unwelcome, severe and pervasive and created an offensive, hostile work environment for Ms. Perdomo. Without any anti-discrimination and/or anti-harassment policies or procedures in place at Federal Jeans, Ms. Perdomo's repeated complaints to Defendant Moussaieff and Ms. Evangelou continued to go unheard. Ms. Perdomo, however, continued to bring the sexual harassment she experienced to the attention of Defendants. In response, Ms. Perdomo was constructively discharged by Defendants.

30.    On January 9, 2007, Ms. Perdomo returned to work. She told Vice President of Sales Tim Perry, her direct supervisor at the time, about what had occurred. He said that he was not surprised by the incident given Defendant Moussaieff's well-known track record of sexually harassing female employees and advised Ms. Perdomo to speak with Mr. Ben-Yosef. When she went to Mr. Ben-Yosef, he responded with an

insincere apology. He proceeded to tell her that because he had not witnessed the incident, he could not say whether it had happened or not.

31.    When she began to cry, Mr. Ben-Yosef asked her numerous times, "What do you want to do?" He did not, at any time, assure Ms. Perdomo that the sexual harassment would be addressed and put to an end. Although she was at an important stage in her career, Ms. Perdomo told Mr. Ben-Yosef, "I'm not stupid but I can't stay here."

32.    Later that evening, after what he had done, Defendant Moussaieff called Ms. Perdomo and offered her a raise in salary in an attempt to persuade her to come back to Federal Jeans. Ms. Perdomo declined the offer, knowing that the sexual harassment would not stop.

33.    It was later learned that Ms. Evangelou, who had failed to address the sexual harassment Ms. Perdomo was subjected to while at the Company, received a promotion and a raise in salary soon after Ms. Perdomo was constructively discharged by Federal Jeans.

34.    Upon information and belief, Defendant Moussaieff has an extensive history of subjecting the Company's female employees to sexual harassment that is well-known to Federal Jeans, yet remains unaddressed. By way of example only, in or about March 2004, a female employee of Federal Jeans filed a Complaint in the Southern District of New York against the Company and Defendant Moussaieff. The plaintiff cited to repeated and continual acts of sexual harassment that did not cease, as well as assault and battery.

35.    Nonetheless, Federal Jeans has continued to create and condone

a sexually hostile work environment that adversely affects the terms and conditions of employment for its female employees, including Ms. Perdomo.

## AS AND FOR A FIRST CAUSE OF ACTION

### (Discrimination and Harassment in Violation of Title VII)

36.    Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 35, inclusive, as if fully set forth herein.

37.    Defendant Federal Jeans has discriminated against Plaintiff on the basis of her sex in violation of Title VII by denying to her equal terms and conditions of employment, including but not limited to, constructively discharging Plaintiff and denying her the opportunity to work in an employment setting free of unlawful harassment.

38.    As a direct and proximate result of Defendant Federal Jeans' unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including but not limited to, loss of past and future income, compensation and benefits for which she is entitled to an award of damages.

39.    As a direct and proximate result of Defendant Federal Jeans' unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of damages.

40.    Defendant Federal Jeans' unlawful discriminatory actions and harassment

9

constitute malicious, willful and wanton violations of Title VII for which Plaintiff is entitled to an award of punitive damages.

### AS AND FOR A SECOND CAUSE OF ACTION
**(Discrimination and Harassment in Violation of
New York State Human Rights Law)**

41.    Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 40, inclusive, as if fully set forth herein.

42.    Defendants have discriminated against Plaintiff on the basis of her sex in violation of the New York State Human Rights Law by denying to her the equal terms and conditions of employment, including but not limited to subjecting her to disparate working conditions and denying her the opportunity to work in an employment setting free of unlawful harassment.

43.    Defendants have discriminated against Plaintiff on the basis of her sex in violation of the New York State Human Rights Law by creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive harassment of Plaintiff.

44.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer monetary and/or economic harm, for which she is entitled to an award of monetary damages and other relief.

45.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not

limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem

and self-confidence, emotional pain and suffering, as well as physical injury, for which

she is entitled to an award of monetary damages and other relief.

### AS AND FOR A THIRD CAUSE OF ACTION

#### (Aiding and Abetting Violations of
#### New York State Human Rights Law)

46.     Plaintiff hereby repeats and realleges each and every allegation in

paragraphs 1 through 45, inclusive, as if fully set forth herein.

47.     Defendant Moussaieff knowingly or recklessly aided and abetted the

unlawful employment practices and discrimination against Plaintiff in violation of the

New York State Human Rights Law.

48.     As a direct and proximate result, Plaintiff has suffered, and continues to

suffer, monetary and/or economic harm for which she is entitled to an award of monetary

damages and other relief.

49.     As a direct and proximate result, Plaintiff has suffered and continues to

suffer severe mental anguish and emotional distress, including but not limited to

depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-

confidence, emotional pain and suffering, as well as physical injury, for which she is

entitled to an award of monetary damages and other relief.

### AS AND FOR A FOURTH CAUSE OF ACTION

#### (Discrimination and Harassment in Violation of
#### New York City Human Rights Law)

50.     Plaintiff hereby repeats and realleges each and every allegation in

paragraphs 1 through 49, inclusive, as if fully set forth herein.

51.     Defendants have discriminated against Plaintiff on the basis of her sex in

11

violation of the New York City Human Rights Law by denying her equal terms and conditions of employment and denying her the opportunity to work in a setting free of unlawful harassment.

52.     Defendants have discriminated against Plaintiff on the basis of her sex in violation of the New York City Human Rights Law by creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive harassment of Plaintiff.

53.     As a direct and proximate result of Defendants' unlawful discriminatory conduct and harassment in violation of the New York City Human Rights Law, Plaintiff has suffered and continues to suffer monetary and/or economic harm, for which she is entitled to an award of monetary damages and other relief.

54.     As a direct and proximate result of Defendants' unlawful discriminatory conduct and harassment in violation of the New York City Human Rights Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as physical injury, for which she is entitled to an award of monetary damages and other relief.

55.     Defendants' unlawful discriminatory actions and harassment constitute malicious, willful and wanton violations of New York City Human Rights Law for which Plaintiff is entitled to an award of punitive damages.

## AS AND FOR A FIFTH CAUSE OF ACTION

### (Aiding and Abetting Violations of
### New York City Human Rights Law)

56.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 55, inclusive, as if fully set forth herein.

57.     Defendant Moussaieff knowingly or recklessly aided and abetted the unlawful employment practices and discrimination against Plaintiff in violation of the New York City Human Rights Law.

58.     As a direct and proximate result, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of monetary damages and other relief.

59.     As a direct and proximate result, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as physical injury, for which she is entitled to an award of monetary damages and other relief.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendants, containing the following relief:

A.     A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States and the State and City of New York;

B.     An injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

13

C.      An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic harm;

D.      An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to her professional and personal reputations and loss of career fulfillment;

E.      An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory harm, including but not limited to, compensation for her mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, emotional distress and physical injuries;

F.      An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

G.      An award of punitive damages;

H.      An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

I.      Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: New York, New York          Respectfully submitted,
       January 28, 2008

THOMPSON WIGDOR & GILLY LLP

By: _____
      Douglas H. Wigdor (DW-9737)

350 Fifth Avenue, Suite 5720
New York, NY 10118
Telephone: (212) 239-9292
Facsimile: (212) 239-9001

COUNSEL FOR PLAINTIFF